UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Case No. 25-30025-MGM |
| ) | |
| DAVID KAUFMAN and ) | |
| DARREN ZALDIVAR, ) | |
| Defendants. ) | |

MEMORANDUM AND ORDER CONCERNING DEFENDANT'S MOTION FOR
LEAVE TO FILE *EX PARTE* MOTION UNDER SEAL
(Dkt. No. 61)

I. Introduction

Before the court is defendant David Kaufman's ("Defendant") Motion for Leave to File *Ex Parte* Motion Under Seal. Defendant seeks the court's authorization to file a motion seeking issuance of Fed. R. Crim P. 17(c) ("Rule 17(c)") subpoena(s) on an *ex parte* basis (Dkt. No. 61). The government opposes Defendant's motion (Dkt. No. 72). For the reasons set forth below, the court GRANTS Defendant's motion.

II. Charges and Relevant Procedural Background

Defendant is charged in a superseding indictment with one count of knowingly persuading an individual to travel in interstate commerce to engage in prostitution in violation of 18 U.S.C. § 2422(a); one count of conspiracy to engage in sex trafficking of a minor in violation of 18 U.S.C. § 1594(c); and one count of sex trafficking of a minor in violation of 18 U.S.C. § 1591(a)(1) and (b)(2). His co-defendant, Darren Zaldivar, is charged in the same superseding indictment with one count of persuading an individual to travel to engage in prostitution in violation of 18 U.S.C. § 2422(a) and one count of conspiracy to engage in sex trafficking of a minor in violation of 18 U.S.C. § 1594(c) (Dkt. No. 34).

Defendant has informed the court that he is exercising his right to a speedy trial. For this reason, the presiding District Judge initially set a July 7, 2025 trial date. On May 30, 2025, that date was vacated on the government's motion after the court released Defendant pending trial on stringent conditions (Dkt. Nos. 58, 68, 70). At this time, the government anticipates trying Defendant and Zaldivar in a single trial. Defendant has, however, filed a motion to sever his trial from that of Zaldivar (Dkt. No. 79). Defendant filed his motion for leave to file an *ex parte* motion for issuance of Rule 17(c) subpoenas on May 23, 2025 before the court vacated the July 7, 2020 trial date (Dkt. No. 61), which motion was heard on June 25, 2025 (Dkt. No. 89). While the court has not yet set a new trial date, the court has advised the parties that, if Defendant's motion to sever is granted, Defendant's trial is likely to take place in early October 2025. It is part of this court's responsibility to ensure, to the extent possible, that discovery disputes and tardy responses to discovery requests do not pose a barrier to a potential October 2025 trial date.

There does not appear to be a dispute that the government's pretrial production of information has been voluminous. At the June 25, 2025 hearing, the government represented that it had been making rolling productions to the defendants, that it continued to receive data, such as, for example, data extractions from electronic devices, and would continue to make rolling productions as it receives information. The government further represented that it believes its productions have been broader that what is required by the court's Local Rules or Fed. R. Crim P. 16. While the government acknowledged its ongoing production obligations and that it had not completed the pretrial production it anticipates making, it represented that it has produced what the government, at least, considers to be the core discovery supporting the charges against Defendant. At the hearing before the undersigned, Defendant agreed that the government had been very good about producing discovery. Mindful of the possibility of an

early trial date, the court set a July 7, 2025 deadline (later extended to July 9, 2025) for Defendant to file a motion to compel, if he deemed it necessary to do so (Dkt. No. 98). In a July 9, 2025 status report, Defendant reported that, while the parties have not resolved all of their disagreements about the government's obligation to produce information, the parties continue to confer in good faith to attempt to narrow areas of disagreement and that, as of July 9, 2025, there were no discovery issues that require resolution by the court (Dkt. No. 103). Defendant's motion for leave to file an *ex parte* motion for issuance of Rule 17(c) subpoena(s) is the only issue related to discovery requiring this court's attention at this time.

    III.    <u>Analysis</u>

"Rule 17(c) provides a process by which federal courts can issue subpoenas duces tecum for the production of evidence before trial." *United States v. Tomison*, 969 F. Supp. 587, 589 (E.D. Ca. 1997).

> A district court has discretion to authorize the issuance of a Rule 17(c) subpoena if the movant shows that the documents sought are relevant and evidentiary; that they are not otherwise procurable before trial by the exercise of due diligence; that the defendant cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and that the application is made in good faith and is not a general "fishing expedition."

*United States v. Colburn*, Criminal No. 19-10080-NMG, 2020 WL 6566508, at *1 (citing *United States v. Nixon*, 418 U.S. 683, 699-700 (1974)). Rule 17(c) "'implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor.'" *United States v. Ventola*, Criminal No. 15-10356-DPW, 2017 WL 2468777, at *3 (D. Mass. June 7, 2017) (quoting *In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir. 1988)). Nonetheless, [o]ne of the fundamental characteristics of the subpoena duces tecum in criminal cases' is that 'it was not intended to provide a means of discovery for criminal cases.'" *Id.*, at *2 (quoting *Nixon*,

418 U.S. at 698). A defendant's pretrial request for discovery from a third party must be specific, narrowly tailored, and aimed at obtaining information that has evidentiary value. *See Nixon*, 418 U.S. at 699-700).

Defendant's motion raises the question of whether Defendant should be permitted to file a motion for issuance of pretrial subpoena(s) on an *ex parte* basis (Dkt. No. 61). Defendant bases this request on the ground that filing the motion and serving it on the government will disclose Defendant's trial strategy, which is protected work product (Dkt. No. 61 at 2). There is substantial guidance on this issue, including in this district where, so far as the court is able to determine, magistrate judges confronted with this question have uniformly permitted defendants to file such motions on an *ex parte* basis on the grounds that, as the First Circuit observed, "[t]he text of Rule 17(c) does not expressly prohibit ex parte requests for subpoenas," *United States v. Kravetz*, 706 F.3d 47, 53 n.4 (1st Cir. 2013), and because "'[f]orcing any defendant to confront the choice between issuing a pre-trial subpoena duces tecum and disclosing his defense to the Government places an unconstitutional limitation on the defendant's right to compulsory process.'" *United States v. Diamont, Jr.*, No. 05-10154-MLW, at *5 (D. Mass. filed Nov. 22, 2005) (quoting *United States v. Beckford*, 964 F. Supp. 1010, 1027 (E.D. Va. 1997)). *See United States v. Nshimiye*, 761 F. Supp. 3d 227, 232-34 (D. Mass. 2024) (considering whether to permit an application for letters rogatory to be filed *ex parte*; analogizing the letters rogatory to Rule 17(c) subpoenas; and concluding that the application could be made on an *ex parte* basis); *Colburn*, 2020 WL 6566508, at *2 ("Defendants here properly were permitted to file motions for Rule 17(c) subpoenas *ex parte* and the government does not argue otherwise."); *Diamont, Jr.*, Criminal No. 05-10154-MLW, slip op. at *5-7 (holding that the defendant could move on an *ex parte* basis for the issuance of Rule 17(c) subpoenas; finding the thorough analysis in *Tomison*,

969 F. Supp. at 587, to be persuasive). Because a defendant must satisfy the *Nixon* standards to obtain court approval for a Rule 17(c) subpoena, "'a party may have to detail its trial strategy or witness list in order to convince a court that the subpoena satisfies the *Nixon* standards.'" *Diamont, Jr.*, Criminal No. 05-10154-MLW, slip op. at *7 (quoting *United States v. Daniels*, 95 F. Supp. 2d 1160, 1163 (D. Kan. 2000)).

Possibly in acknowledgment of the consensus among other sessions of this court, "[t]he government *agrees* that *ex parte* applications *may be permitted* in some circumstances" (Dkt. No. 72 at 13). The government argues that the court should deny Defendant's motion without prejudice in this case because: (a) with no pending trial date, there is no urgent need for the court to rule on this motion; and (b) the government believes "the court may be ill-positioned to determine questions of relevance, admissibility, and specificity" without the government's input (Dkt. No. 72 at 4). The court addresses these contentions in turn.

    a.    Timing

The government argues that Defendant's motion should be denied without prejudice because, with no trial date set, there is no urgency, and the court should be skeptical about Defendant's need for Rule 17(c) subpoenas when the government has only recently produced a voluminous amount of discovery that, if Defendant took time to review it, might obviate the necessity of seeking third party discovery.

This argument is unpersuasive. First, as Defendant points out, in *Nixon,* the Supreme Court observed that Rule 17(c)'s "chief innovation was to expedite the trial by providing a time and place *before trial* for the inspection of subpoenaed materials." *Nixon*, 418 U.S. at 699 (footnote omitted; emphasis added); *see also Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *Tomison*, 969 F. Supp. at 593. Second, in framing his defense, Defendant is not

limited to relying on information from third party sources identified by the government, which is focused on obtaining inculpatory information. The government's production may be voluminous, but it may not extend to information that Defendant believes necessary to mounting his defense. The suggestion that the government's production might obviate or diminish Defendant's need for third party discovery is purely speculative. Third, as noted above, Defendant has filed a motion to sever. The parties have been informed that if that motion is granted, trial is likely to commence in early October 2025. Managing the information gathered in this case will be challenging, trial preparation will be complicated, and it is entirely reasonable for Defendant to seek to exercise his constitutional right to process to secure information he deems relevant to his defense at this time.

      b.      Government Participation

The government's substantive reasons for opposing Defendant's motion give insufficient weight to the interests that Rule 17(c) protects. As Judge Dein observed in the *Diamont, Jr.* case, those interests are persuasively laid out in the *Tomison* decision, in which the court responded to most of the contentions raised here by the government. As the *Tomison* court explained, "[a] criminal defendant has both a constitutional right to obtain evidence which bears upon the determination of either guilt or punishment …, and a Sixth amendment right to process." *Tomison*, 969 F. Supp. at 593 (citing *California v. Trombetta*, 467 U.S. 479, 485 (1984); U.S. CONST. amend. VI; cleaned up). "[I]f [a defendant] had to reveal the identity of the witnesses from whom the information is being sought, and, more importantly, the factual basis for his request for information, the [d]efendant would be forced to provide the details of his trial strategy." *Dimont, Jr.*, Criminal No. 05-10154-MLW, slip op. at *6-7. "[T]he fact that a criminal defendant has both a right to the pre-trial production of evidence and a right to protect

his trial strategy, contraindicates a noticed motion practice requiring disclosure to the government of the defendant's theory of the case as a precondition to obtaining subpoenas duces tecum under Rule 17(c)." *Tomison*, 969 F. Supp. at 593. (footnote omitted).

The court is not persuaded by the government's contention that the court will not be able to apply the *Nixon* factors without the government's input. The *Tomison* court addressed this contention as well, stating "there is no reason to suppose that the government's participation is required to ensure that the court performs its duty in determining that the requisites for issuing the subpoena have been demonstrated and that the party seeking the subpoena is not simply on a fishing expedition." *Id.* at 594 (citing *Beckford*, 964 F. Supp. at 1027-28; *United States v. Jenkins*, 895 F. Supp. 1389, 1397 (D. Haw. 1995); *United States v. Reyes*, 162 F.R.D. 468, 471 (S.D.N.Y. 1995)). "[I]t is the responsibility of the court, not the opposing party, to ensure that a subpoena secured under Rule 17(c) is for a proper purpose." *Id.* (citing *Bowman Dairy*, 341 U.S. at 221; *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981)). It is a role with which courts are not unfamiliar. For example, the court regularly reviews search warrant applications submitted by the government on an *ex parte* basis.

The government's articulated sensitivities around communications by defense counsel or defense investigators with victims are understandable. Those concerns, however, are addressed by Rule 17(c), which provides, in pertinent part, that, after an indictment is filed, "a [Rule 17(c) subpoena] requiring the production of personal or confidential information about a victim may be served on a third party only by court order." Fed. R. Crim P. 17(c)(3). The rule requires notice to the victim before the court authorizes such a subpoena, "so that the victim can move to quash or modify the subpoena or otherwise object." *Id.* The court has further said that it will oblige Defendant to comply with this restriction as to any request for a subpoena seeking

7

information about Zaldivar, Defendant's co-defendant. As to so-called uncharged victims, the government seized the opportunity to articulate its relevancy objection in its opposition to Defendant's motion, and it further articulated other general concerns, thereby providing at least some of its objections to Defendant's subpoena requests in advance, albeit in general terms (Dkt. No. 72 at 11). Beyond the restrictions set out above, the court finds that the government's concerns do not outweigh Defendant's "constitutional right to full process." *Tomison*, 969 F. Supp. at 595.

### IV. Next steps

Defendant may move *ex parte* for issuance of subpoenas pursuant to the procedures in Fed. R. Crim. P. 17. The court will not set a deadline for the filing of such a motion or motions but anticipates that Defendant will proceed as promptly as possible given the possibility of an October 2025 trial. The court reserves the right, not contested by Defendant (Dkt. No. 76 at 5), to determine whether "the *ex parte* nature of [a particular] application is appropriate. If *ex parte* is unwarranted, the court [will] unseal the motion, and provide notice to the opposing party." *Beckford*, 964 F. Supp. at 1031; *see also Nshimiye*, 761 F. Supp. 3d at 233 n.9.

### V. Conclusion

For the foregoing reasons, Defendant's Motion for Leave to File *Ex Parte* Motion Under Seal is GRANTED.

It is so ordered.

Dated: July 17, 2025                                      <u>Katherine A. Robertson</u>
                                                          KATHERINE A. ROBERTSON
                                                          U.S. MAGISTRATE JUDGE