UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cr-30025-MGM |
| | ) | |
| DAVID KAUFMAN and | ) | |
| DARREN ZALDIVAR | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO COMPEL COPYING
AND PRODUCTION OF MEDIA FILES
(Dkt. No. 122)

ROBERTSON, U.S.M.J.

Before the court is a motion filed by the defendants, David Kaufman ("Kaufman") and

Darren Zaldivar ("Zaldivar") (collectively, "Defendants"), to compel the copying and

transmission of media files[1] (Dkt. No. 122), primarily from Kaufman's iCloud account.  The

government argues that it cannot produce the media files at issue because the Adam Walsh Child

Protection and Safety Act ("Adam Walsh Act" or "Act") prohibits its production of Child Sexual

Abuse Material ("CSAM") and the media files may be CSAM.  For the reasons that follow, the

motion is granted in part and denied in part.

I.    Background

---

[1] The parties use the term "media files" to refer to electronically stored files, primarily but not
exclusively from Kaufman's iCloud account as produced by Apple, that consist of photographs
or videos.  Kaufman's iCloud and other accounts also included text and other files that are not
the subject of Defendants' motion to compel.

1

Kaufman was arrested on April 16, 2025 during the execution of a search warrant at his residence in Baltimore, Maryland (Dkt. No. 155 at 6).  Zaldivar was arrested the following month pursuant to an arrest warrant issued by the United States District Court for the District of Massachusetts (Dkt. Nos. 35, 45).  Kaufman is charged by a superseding indictment with persuading an individual to travel to engage in prostitution, in violation of 18 U.S.C. § 2422(a), and sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1) and (b)(2).  Zaldivar is charged with transporting an individual with intent to have the individual engage in prostitution, in violation of 18 U.S.C. § 2421, and both Defendants are charged with conspiracy to engage in sex trafficking of a minor, in violation of 18 U.S.C. § 1594 (Dkt. No. 34).

On November 14, 2024, before Defendants' arrests, the FBI obtained a warrant to search the contents of a Snapchat account that was associated with Kaufman (Dkt. No. 121-1 at 14; Dkt. No. 155 at 4).  On November 25, 2024, a search warrant was sent to Apple for the data associated with Kaufman's Apple i.d. as well as the data in Kaufman's iCloud account (Dkt. No. 121-1 at 14-15; Dkt. No. 155 at 4).  Apple and Snapchat returned a voluminous amount of data to the government in response to the Kaufman search warrants (Dkt. No. 104 at 8; Dkt. No. 140 at 16; Dkt. No. 155 at 5), including thousands of videos and photographic images from Kaufman's iCloud account (Dkt. No. 104 at 17, 20; Dkt. No. 155 at 5).

The government represents that for purposes of discovery it segregated the non-media content in Kaufman's accounts and copied and provided that content to Defendants (Dkt. No. 104 at 21; Dkt. No. 140 at 9; Dkt. No. 155-2 at 1).  The government has made media files from Kaufman's iCloud and other accounts available for inspection at FBI offices in Springfield and Scranton, Pennsylvania, which is the location of the FBI office closest to the home where Kaufman is released under supervision subject to strict conditions pending trial.  It has not

permitted Defendants to copy the media files, nor has it made copies of the media files for Defendants. The government justifies this limited access to the media files on the grounds that there is evidence that Kaufman recorded his sexual encounters with young men of uncertain age and that the government has identified multiple videos of such encounters on Kaufman's iCloud account and has evidence that at least one individual was under 18 years old when Kaufman recorded their sexual encounter and, thus, this video is CSAM (Dkt. No. 155 at 7-8). Further, Kaufman's iCloud account purportedly contains self-produced sexually explicit videos and images others transmitted to Kaufman. The government asserts that some images on Kaufman's iCloud and Snapchat accounts may be CSAM because Kaufman allegedly paid a minor to self-produce and send him pornographic images via Snapchat (Dkt. No. 155 at 9). According to the government, it has produced media files it has determined are not CSAM, although the government has not reviewed all the media files in Kaufman's iCloud account (Dkt. No. 155-2).

At the hearing on Defendants' motion, the government represented that there are approximately 2,000 sexually explicit media files from Kaufman's accounts in the iCloud account that have been made available to Defendants for viewing and examination – but not copying – at FBI offices in Springfield and Scranton. According to the government, it is justified in limiting Defendants' access to these media files because the individuals in the media files, whose identities are not known to the government, are around the age of 18 and that makes it very difficult for the government to determine whether the media files are CSAM (Dkt. No. 104 at 23). The media files that the government has made available for Defendants' inspection are the subject of the Defendants' motion to compel.[2]

---

[2] Because the parties represent that the amount of data in the Snapchat accounts is limited and, according to the government, it can more easily discern whether the Snapchat material contains CSAM, the parties and the court have focused on the media files in Kaufman's iCloud account.

II.    <u>Analysis</u>

Federal Rule of Criminal Procedure 16(a)(1)(E) provides that:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> > (i) the item is material to preparing the defense;
> >
> > (ii) the government intends to use the item in its case-in-chief at trial; or
> >
> > (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).  Although the media files were obtained from Apple, the government has not argued that the media files from Kaufman's iCloud account do not belong to Kaufman.  Further, Kaufman has argued that the media files are material to preparing his defense.  It is undisputed for purposes of this motion that the media files at issue are Rule 16(a)(1)(E) material.

The government points to the Adam Walsh Act ("the Act"), which provides, in pertinent part:

> (1) In any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256 of this title) shall remain in the care, custody, and control of either the Government or the court.
>
> (2)(A) Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography (as defined by section 2256 of this title), so long as the Government makes the property or material reasonably available to the defendant.
>
> (B) For the purposes of subparagraph (A), property or material shall be deemed to be reasonably available to the defendant if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of

---

References to the contents of Kaufman's iCloud account should be understood to encompass the contents of his other electronically stored accounts.

the property or material by the defendant, his or her attorney, and any individual
the defendant may seek to qualify to furnish expert testimony at trial.

18 U.S.C. § 3509(m).

Defendants ask the court to order the government to "(1) designate particular media files as child pornography and produce to the defense a redacted version of evidence that redacts the image/video and identifies it as CSAM; or (2) produce the material to the defense as not CSAM" (Dkt. No. 122 at 5). Defendants argue that the government is violating Rule 16(a)(1)(E) by "refus[ing] to produce to the defense a copy of the thousands of media files it has collected in the course of discovery, arguing that there might be child pornography within the files and it would be too hard for the Government to search the media files and parse out which is which" (Dkt. No. 122 at 2).[3] Defendants claim that the Adam Walsh Act does not prevent the government from complying with its Rule 16 discovery obligation because the government has not yet identified any CSAM in the material that Apple produced in response to the search warrant and the Act does not apply to potential CSAM (Dkt. No. 122 at 2-4).

For its part, the government contends that its caution is justified because its investigation has given it significant reason to believe that Kaufman possessed, if he did not also produce, CSAM, and stored in his iCloud account (Dkt. No. 155 at 1, 7-10, 13). Because the Adam Walsh Act requires that CSAM remain in the custody of the government or the court and bars the court from ordering its duplication and dissemination, the government is unwilling to risk violating the

---

[3] By its terms, Rule 16 does not require the government to provide a defendant copies of items that fall within its ambit, but only to make the items such as the media files available for copying. This district's local rule does not specify how production is to be made. *See* generally, LR, D. Mass. 116.1. The government acknowledges, however, that the practice in this district has been for the government to copy (e.g., on a hard drive) or upload items, such as the media files, that fall within Rule 16(a)(1)(E)'s ambit.

Adam Walsh Act by doing more than making image files from Kaufman 's iCloud account available for inspection. The government argues this procedure satisfies its Rule 16 obligations.

Although there is no dispute that at least some if not all of the approximately 2,000 media files at issue are sexually explicit, the parties disagree on whether the Adam Walsh Act applies when the government represents that it cannot be sure whether some, and if so, which, images are CSAM. Neither the court nor the parties have found a criminal case that addresses the circumstances at issue here where the government has a reasonable basis to believe that the seized evidence contains CSAM but cannot say for certain that the person depicted in a particular sexually explicit media file is a minor. In addressing the issue, the court is mindful that Congress passed the Adam Walsh Act to "'protect children from repeat exploitation in child pornography,'" *United States v. Johnson*, 456 F. Supp. 2d 1016, 1019 (N.D. Iowa 2006) (citation omitted). *See* 18 U.S.C. § 3509(m)(1) & (2)(A) (citing 18 U.S.C. § 2256(1), (8)). *See also* Adam Walsh Child Protection and Safety Act, Pub. L. No. 109-248, 120 Stat. 587 § 501(2) (2006) (stating that child pornography is "prima facie contraband" and each viewing of child pornography "represents a renewed violation of the privacy of the victims and a repetition of their abuse"). In furtherance of the Act's goal, the limitations on the duplication and dissemination of child pornography in § 3509(m)(1) and (2)(A) prevent the child pornography material that the government has collected for use in a criminal trial from "escap[ing]" into the public domain. *Johnson*, 456 F. Supp. 2d at 1019. *See also United States v. Mitchell,* 128 F. Supp. 3d 1266, 1272 (E.D. Cal. 2015); 18 U.S.C. § 3509(m)(1) & (2)(A).

In a civil case from another jurisdiction, which was brought by a victim of child sexual abuse against defendants that allegedly "engaged in mass creation, possession, and distribution" of CSAM, including images of the plaintiff, in their operation of websites, the court addressed a

protocol for discovery that would comply with the Adam Walsh Act when some of the material responsive to plaintiff's discovery requests consisted of images that were indisputably CSAM and some consisted of images that the plaintiff suspected might be CSAM because the images had been flagged by a website user as CSAM or otherwise contained indications that raised the possibility that the images were illegal. *Doe #1 v. MG Freesites, Ltd.,* 7:21-cv-00220-LSC, 2023 WL 5313081, at *1-2, *6 (N.D. Ala. Aug. 17, 2023). *See* 18 U.S.C. §§ 2255 and 2255A(f) (providing civil remedies for child pornography victims).

The *Doe #1* court set up a protocol that precluded direct production with respect to the plaintiff's discovery of images that the defendants or others had reported to the relevant authorities as CSAM. *See Doe #1,* 2023 5313081, at *2-3. Turning to the question of how to handle discovery of the images the plaintiff characterized as suspected CSAM, the court "agree[d] with Plaintiff that anything that amounts to suspected CSAM must be treated with the same caution as defined CSAM." *Id.* at *6. In *United States v. Yahola*, Case No. 24-CR-163-JFH, 2024 WL 5201215 (N.D. Okla. Dec. 23, 2024), in a different factual context, the court reached a similar conclusion. In the *Yahola* case, the defendant contended that the government was violating Fed. R. Crim. P. 16 by refusing to release a sanitized work product folder created at an FBI facility by the defendant's retained expert. *Id.* at *1. The defendant sought an order requiring the government to permit the defendant's expert to review the contents of the sanitized work product file she had extracted at her own laboratory. *Id.* The expert testified at an evidentiary hearing about the process by which she had sanitized the work product file and that, using FBI-provided forensic tools and a manual forensic analysis, she had not found any CSAM in her work product file. *Id.* The defendant's expert admitted, however, that it was still possible "for CSAM to be in the exported data." *Id.* at *2. The court denied Defendant's request and

ordered that the defendant's expert be permitted to review the sanitized work product file at an FBI facility closer to the expert's laboratory. *Id.* at *3. The court held that this approach would satisfy the defendant's due process rights "while also accounting for the statutory protections provided by the Adam Walsh Act." *Id.*

In the instant case, the government has persuasively represented that, given Kaufman's pattern of conduct, there is a real risk that sexually explicit media files of unidentified subjects in the iCloud account are child pornography. In view of the Act's directive that a court shall deny any request by a criminal defendant to copy or otherwise duplicate material that constitutes child pornography, the court will not take the risk of ordering the government to copy or permit Defendants to copy and thereby disseminate images that may later be identified as CSAM. To the extent Defendants contend that the government has not made the Kaufman iCloud media files reasonably available to Defendants, *see* 18 U.S.C. § 3509m(2)(A) & (B), there are multiple cases addressing conditions that courts have deemed are sufficient to ensure reasonable availability as required by the Act. *See, e.g., United States v. Mayer*, Case No. 19-cr-0096 (WMH/HB), 2020 WL 814187, at *4-5 (D. Minn. Feb. 19, 2020); *see also Yahola*, 2024 WL 5201215, at *3.

That said, the court does not agree with the government's position that Defendants' motion should be denied in toto on the ground that it would be unduly burdensome for the government to review all of the media files in Kaufman's iCloud and other accounts to screen out CSAM and potential CSAM. The government's representation that it is prepared to release media files if Kaufman's legal team reviews the contents of Kaufman's iCloud account, identifies media files it wants released, and certifies that these media files do not contain CSAM is a nonstarter for at least two reasons. First, notwithstanding a presumption of good faith, there is the potential for inadvertent error by Kaufman's defense team that could result in the release of

8

CSAM in violation of the Adam Walsh Act. Second, and of more import, this proposal would risk disclosing Defendants' trial strategy and might risk incriminating Kaufman in that if Kaufman's defense team designated some media files as being free of CSAM, that might give rise to an inference that other media files contained CSAM or might assist the government in structuring its investigation. In either event, the proposal would violate Kaufman's Fifth Amendment right against self-incrimination. *See United States v. Foreman,* Case No. 2:23-cr-00105-GMN-EJY-1, 2024 WL 2302257, at *3 (D. Nev. May 20, 2024) (conditions for viewing and examination of CSAM material under the Adam Walsh Act cannot threaten disclosure of a defendant's strategy or privileged information).

It remains the case that, under Rule 16(a)(1)(E)(iii), Defendants are entitled to inspect and copy data that is not CSAM or suspected CSAM extracted from Kaufman's accounts. *See Mayer,* 2020 WL 814187, at *6; Fed. R. Crim. P. 16(a)(1)(E)(iii). The government fails to cite "any legal authority to support its position that discovery otherwise authorized by Rule 16(a)(1)(E) could be withheld if inefficient or costly to produce." *Meyer,* 2020 WL 814187, at *6. Thus, the government cannot avoid its obligation to inspect the media files from Kaufman's iCloud account in good faith and comply with Rule 16(a)(1)(E) as to media files that the government determines are not CSAM.

For the foregoing reasons, the court orders as follows:

1. The government will review the media files extracted and will identify and segregate the non-CSAM material from the apparent or confirmed CSAM and suspected or potential CSAM by no later than December 31, 2025.

2.      Any non-CSAM material that the government identifies is subject to Rule 16(a)(1)(E). In keeping with the practice in this district and to facilitate Defendants' access, the government will provide copies of that material to Defendants on a rolling basis.

3.      Confirmed and suspected CSAM is subject to the Act and the government shall make it available to Defendants for inspection in compliance with Act.

      III.    <u>Conclusion</u>

For the above-stated reasons, Defendants' Motion to Compel Copying and Production of Media Files (Dkt. No. 122) is granted in part and denied in part.

It is so ordered.

Date:  December 4, 2025                        <u>Katherine A. Robertson</u>
                                              KATHERINE A. ROBERTSON
                                              U.S. MAGISTRATE JUDGE